Cheshire,
No. 4839.

ANTOINETTE PARENTEAU, *Ex'x v.* MARIE ANN GAILLARDETZ.

Argued November 1, 1960.

Decided November 30, 1960.

*Leonard & Leonard (Mr. Richard W. Leonard* orally), for the plaintiff.

*Faulkner, Plaut & Hanna* and *John J. Zimmerman (Mr. Zimmerman* orally), for the defendant.

KENISON, C. J.   The first issue in this case is whether RSA

384:28, which was enacted by Laws 1953, c. 162, s. 1, effective May 14, 1953, operates to vest the joint accounts in the plaintiff as surviving joint tenant. The statute reads as follows: "ON DEATH OF DEPOSITOR. Whenever *any* account shall be *maintained* in *any* bank doing business in this state in the names of two persons payable to either of such persons, and payable to the survivor of them, the said account shall upon the death of either of said persons become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited were the property of only one of said persons, and irrespective of whether or not at the time of the making of such deposits there was any intention on the part of the person making such deposit to vest the other with a present interest therein, and irrespective of whether or not only one of said persons during their joint lives had the right to withdraw such deposit, and irrespective of whether or not there was any delivery of any bank book, account book, savings account book, certificate of deposit, or other evidence of such an account, by the person making such deposit to the other of such persons." (Emphasis supplied).

Prior to the enactment of this statute the surviving joint tenant of a bank deposit had a difficult time to establish his rights to the account either because he could not prove the elements of a valid gift or because the transaction was considered testamentary in character and insufficient to satisfy the statute of wills. *New Hampshire Sav. Bank* v. *McMullen*, 88 N. H. 123; *Packard* v. *Foster*, 95 N. H. 47; *Nashua Trust Co.* v. *Mosgofian*, 97 N. H. 17. The same situation existed in later cases where the original depositor died before the effective date of RSA 384:28-32. *Chretien* v. *Duhaime*, 100 N. H. 254, 256; *Bradley* v. *State*, 100 N. H. 232. In the present case the statute had been in effect almost two years before the death of the depositor and in the statutory language was an account of the type described therein which was "maintained" in the bank after the passage of the statute. The statute was clearly designed to make the ownership of joint survivorship accounts more certain, and such a joint account which had been maintained in a bank for two years is within the purview of RSA 384:28. This conclusion was foreshadowed in *Cournoyer* v. *Bank*, 98 N. H. 385, 393, in the following quotation: "The recently enacted provisions of Laws 1953, c. 162 [RSA 384:28-32] were designed to eliminate any question of the right of the survivor of two persons named upon an account such as this one, to ownership

and payment of the account 'upon the death of either of said persons.' They do not apply to this case since the decedent died on June 20, 1951. For the future, accounts governed by this statute are unlikely to present the problems which confronted the plaintiff in this action."

We are urged to give this statute a strict construction on the ground that it is in derogation of the common law. However, the statute is clearly remedial in nature and was a legislative attempt to put at rest the uncertain results attendant on litigation predicated on the theory of gifts. See the quotation from the note in 53 Colum. L. Rev. 103, 116 in *Cournoyer* v. *Bank*, 98 N. H. 385, 393: "The best way to remedy this situation would be legislative re-modelling of the entire law of donative bank accounts. There should be a separate type of bank deposit book, stating succinctly the effect to be given the deposit, both during the life of the depositor and after his death . . . . " We agree with the Trial Court that the statute which was enacted in 1953 applies to these three joint bank accounts upon the death of the decedent in 1955.

The second question is whether the plaintiff waived or disclaimed the balance of these joint bank accounts remaining after the payment of funeral bills, legacies and other expenses by including two of them in the inventories she filed in the probate estate. An examination of the record indicates that the plaintiff was attempting to follow instructions she had received in order to pay the debts of the decedent and the expenses of administration. However, none of her actions in filing the inventories or the amended accounts constituted a voluntary relinquishment of known rights in the bank accounts. See *Commercial Cas. Co.* v. *Mansfield*, 98 N. H. 120, 128. While it is true that she could have surrendered her rights in the bank accounts, the evidence justifies the Court's finding "that there was never any intention to waive the rights of Antoinette Parenteau in any portion of the bank accounts beyond such sum as might be required to pay debts of the decedent and expenses of administration." This is not a case where the beneficial interest is specifically disclaimed as was the situation in *Bradley* v. *State*, 100 N. H. 232.

The Legislature has expressed in emphatic and clear terms a purpose to make joint bank accounts with rights of survivorship effective and as certain as circumstances will permit. See Note, Disposition of Bank Accounts: The Poor Man's Will, 53 Colum. L. Rev. 103 (1953). This legislative purpose was fulfilled by the

Trial Court and we find no error therein. See I Scott, Trusts (2d *ed.* 1956) *s. 58.6, p. 509.*

*Exceptions overruled.*

All concurred.